810 So.2d 1171 (2002)
Richard PHILLIPS, Plaintiff-Appellee,
v.
EPCO CARBON DIOXIDE PRODUCTS, INC., Defendant-Appellant.
No. 35,740-WCA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
*1172 Hudson, Potts & Bernstein by Jan P. Christiansen, Monroe, for Appellant.
Lee & Broussard by Francis C. Broussard, Monroe, for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
The employee in this case died in a traffic accident on his commute to work at a chemical plant where he was an operator. The employee's family members seek workers' compensation benefits asserting that the decedent's employment-related travel costs were paid by the employer through a monthly travel allowance. The employer argues that the travel allowance and payment of actual mileage expense applied only to the decedent's trips for the company to other work sites and not to the plant he routinely operated. The workers' compensation judge (WCJ) ruled for the employee's family, and we now affirm the ruling.

Facts
On February 26, 2000, Richard Phillips ("Richard") was killed in a one vehicle accident when his truck hydroplaned off a wet highway in Ouachita Parish, striking a tree. At the time of the accident, Richard was on his way to work from his West Monroe home to EPCO Carbon Dioxide Products, Inc.'s ("EPCO") plant in Sterlington. Richard owned the truck involved in the accident.
Richard worked for EPCO for about seven years. When the accident occurred, he was classified as the Sterlington plant operator. His job duties, however, required him to travel to other EPCO plants in Louisiana and adjoining states. In addition to his salary, EPCO paid Richard a substantial monthly car allowance of $500 per month. When Richard drove to EPCO's other plants, EPCO reimbursed Richard a nominal 6¢ per mile to help defray the cost of gasoline. Richard was on-call and frequently left home to drive to the other plants, either to deliver parts, rebuild equipment or otherwise fill in.
Richard's widow, Ruth M. Phillips, and their two children, Erica and Erin, filed a claim for workers' compensation benefits and funeral expenses. EPCO denied any liability, arguing that Richard's accident did not occur while he was in the course of his employment. As its defense, EPCO attempted to differentiate Richard's trips from his home to the Sterlington plant, for which he was not compensated 6¢ per mile, from Richard's trips to other EPCO facilities, for which he did receive 6¢ per mile. Richard's monthly expense reports disclose that EPCO compensated him $1,751.56 for the 21,196 miles he drove during the 12 month period preceding the accident. None of the reimbursement included Richard's regular commute from West Monroe to the Sterlington plant.
At trial, Ruth Phillips testified that her husband was often called out to make repairs and deliver parts, including nights, weekends and holidays. She testified that because of his travel duties, EPCO offered *1173 Richard the choice of a company-owned truck or a monthly travel allowance.
After trial, the WCJ found that Richard was in the course and scope of his employment when the accident occurred and awarded death benefits and funeral expenses ($7,028.77). It is from this judgment that EPCO appeals.

Discussion
EPCO argues that Richard's accident occurred during his routine commute to work to the Sterlington plant and therefore fell within the general rule excluding workers' compensation benefits for an accident that does not arise out of and in the course of employment. La. R.S. 23:1031. EPCO cites this court's ruling in Yates v. Naylor Indus. Services, Inc., 569 So.2d 616, 619 (La.App. 2d Cir.1990), writ denied, 572 So.2d 92 (La.1991), where we set forth the general rule regarding an employee's commute, as well as the exception to the rule, as follows:
As a general rule, accidents which occur while an employee is traveling to and from work are not considered as having occurred during the course of employment and are therefore not compensable. This rule is premised on the theory that ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work. However, this rule has been subject to a number of jurisprudentially established exceptions. For example, these exceptions have arisen:
* * *
3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses.
Focusing on the fact that EPCO did not reimburse Richard 6¢ per mile for his trip to Sterlington when the accident occurred, EPCO insists that the exception to the general rule should not apply. To determine whether this distinction negates the effect of EPCO furnishing Richard a monthly travel allowance, and removes this accident from coverage under the Workers' Compensation Act, we have reviewed the case law from which the rules set forth in Yates developed.
In a 1927 decision of this court, the employee was injured on his way home from work while making a jump from a moving train operated by the employer. May v. Louisiana Central Lumber Co., 6 La.App. 748 (2d Cir.1927). The workers were permitted to ride the train to and from the lumber mill. The initial expression of the rule in that early decision under the Workers' Compensation Act was that "[w]here an employee, while riding to or from his work in a conveyance under the control of and furnished by the employer as an incident of the employment is injured, it is generally held that the injury arose in the course and out of the employment." Id.; see also Thompson v. Bradford Motor Freight Line, 148 So. 79 (La. App.Orl.1933).
Later, after a conflict over this matter arose among the appellate courts, the Louisiana Supreme Court addressed the issue. Griffin v. Catherine Sugar Co., 219 La. 846, 54 So.2d 121 (La.1951). The accident in Griffin occurred when the employee was injured in a fall from the trailer of the employer's truck which was transporting him home from work. The court ruled in favor of the employee, finding that:
"... the general rule throughout the country is to the effect that `where transportation is furnished by an employer as an incident of or under the contract of employment an injury to or *1174 death of an employee which results while he is riding to or from work in a conveyance so furnished by the employer arises out of and in the course of the employment, within the meaning of the workmen's compensation acts.'" [Citations omitted]
Id. at 123-124. This expression of the rule differed from the earlier expression by the Second Circuit by not stating that the vehicle must be under the employer's control. Nevertheless, the truck in Griffin was being driven by another employee who was transporting many workers. The court also stated that the employee had not departed from his employment duties, since he was being directed by another employee at the time of the accident to get off the truck to stop a fight between two other workers.
After the Griffin ruling, the exception to the general rule evolved further in the case of Callihan v. Fireman's Fund Indem. Co., 110 So.2d 758 (La.App.Orl.1959). The employee in that case was injured in his own automobile while returning home from working at a construction site. Under the union contract for the injured carpenter, the employer had the option of either furnishing a truck or other vehicle, or paying the employee a transportation allowance of 3-1/2¢ per mile each way to and from work. Also, the employee was entitled to be paid his regular hourly wage rate for the travel time to and from the job site. The employer argued that, unlike the employer in Griffin, it did not furnish a vehicle and driver so as to maintain control at the time of the accident. The court rejected that argument and ruled:
Under the specific provisions of the contract of employment the employer was obligated to furnish plaintiff with transportation, it being optional with the employer whether it should supply the facilities or pay the mileage allowance to plaintiff in consideration of his making use of his own means of transportation. If the accident had happened while plaintiff was being transported via facilities which the employer had furnished, no one would question for a moment, in view of the settled jurisprudence, that plaintiff would be considered as having been injured in an accident arising out of the employment. We think the same rule should prevail in the instance where the employer chooses not to furnish the actual facilities for transportation but instead makes monetary allowance to the employee for seeing to his own transportation to and from the job.
* * *
The question we have resolved is not new in Louisiana. The proposition is discussed by Malone in his Louisiana Workmen's Compensation Law and Practice, wherein the author, on page 207, makes these observations:
The rule applies whenever the employer has interested himself in the transportation to and from work as an incident to the employment agreement, and it is immaterial whether he provides a conveyance and driver or merely pays the cost of fuel for the employee's own vehicle....
After the Callihan ruling, various other appellate courts of Louisiana have also found coverage under the Act in similar settings. Miller v. Indemnity Ins. Co. of North America, 121 So.2d 581 (La.App. 2d Cir.1960); Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3d Cir.), writ refused, 256 La. 894, 240 So.2d 231 (1970); Thomas v. RPM Corp., 449 So.2d 18 (La. App. 1st Cir.), writ denied, 450 So.2d 965 (La.1984); Folse v. American Well Control, 536 So.2d 686 (La.App. 3d Cir.1988), writ denied, 538 So.2d 592 (La.1989). These cases found coverage for injuries occurring while going to and from work, either (1) in an automobile owned by the *1175 injured employee or another employee, where transportation allowances were paid; or (2) in company-owned vehicles driven by the injured employee.
From this review of the history of these rules concerning coverage for commuting workers' accidents, we find that the disputed exception, which places some workers within the coverage of the Act, now rests entirely on the fact that the employer has taken an interest in the transportation of the employee as an inducement to the employment agreement. By emphasizing the fact that it only paid Richard mileage expense for certain company trips, but not for his regular Sterlington commute, EPCO suggests that this expense control aspect placed upon the employee by the employer is a better test of whether Richard was in the course and scope of his employment. Nevertheless, as shown above, employer control over the employee during the commute to or from work is not emphasized by the jurisprudence. A worker who drives to his routine place of employment while being paid a monthly travel allowance is under no more employer control than a worker without such an allowance. Yet, under the jurisprudence, workers' compensation coverage extends to the former employee, and not the latter.
In this case, Richard elected not to drive and keep a company-owned vehicle at his home for travel to wherever his employer directed him. Instead, he was paid a substantial $500 per month travel allowance. EPCO apparently concedes that if the accident had happened in a company-owned vehicle, the issue of who paid for the actual gasoline for the trip to Sterlington would be irrelevant and workers' compensation coverage would apply to this accident. Furnishing a company-owned truck or a monthly travel allowance therefore both meet the test which holds an employer liable under the Act when the employer interests itself in the employee's transportation, thereby serving as an inducement to the employment agreement.
Accordingly, we reject EPCO's arguments, and affirm the WCJ's ruling that this accident is covered under the Act. Costs of appeal are assessed to appellant, EPCO Cardon Dioxide Products, Inc.
AFFIRMED.